**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) | CIVIL NO. 04-00550 HG-BMK |
| | ) | **ORDER GRANTING PLAINTIFF** |
| | ) | **SCOTTSDALE INSURANCE** |
| Plaintiff, | ) | **COMPANY'S MOTION FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT; AND** |
| vs. | ) | **DENYING DEFENDANT SULLIVAN** |
| | ) | **PROPERTIES, INC.'S CROSS-** |
| SULLIVAN PROPERTIES, INC.; | ) | **MOTION FOR SUMMARY JUDGMENT;** |
| ROBERT B. SULLIVAN; MAUI LAND & | ) | **AND DENYING DEFENDANT ROBERT** |
| PINEAPPLE COMPANY, INC.; AND | ) | **B. SULLIVAN'S COUNTER-MOTION** |
| KAPALUA LAND COMPANY, LTD., | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

ORDER
GRANTING PLAINTIFF SCOTTSDALE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND
DENYING DEFENDANT SULLIVAN PROPERTIES, INC.'S
CROSS-MOTION FOR SUMMARY JUDGMENT
AND
DENYING DEFENDANT ROBERT B. SULLIVAN'S
COUNTER-MOTION FOR SUMMARY JUDGMENT

Plaintiff Scottsdale Insurance Co. ("Scottsdale") filed a
complaint seeking a declaration that it had no duty to defend or
indemnify Defendants Sullivan Properties, Inc. ("Sullivan
Properties") and Robert B. Sullivan ("Sullivan") (collectively,
"Defendants") in connection with claims made against Defendants
regarding their alleged infringement of the "Kapalua" trade name

1

and trademark.[1]

The Court holds that the first-publication exclusion applies
to bar coverage under the insurance policies issued by Scottsdale
because Defendants first infringed the "Kapalua" trade name and
trademark before the effective date of the first insurance
policy.  The Court further holds that the "known loss" rule bars
coverage because Defendants knew, or should have known, that
their continued attempts to use the "Kapalua" trade name or
trademark would lead to a substantial probability of loss.

### PROCEDURAL HISTORY

On September 9, 2004, Scottsdale filed a four-count
Complaint for declaratory relief.

On May 10, 2005, Scottsdale moved for partial summary
judgment (Doc. 41) and filed "Plaintiff Scottsdale Insurance
Company's Separate and Concise Statement of Facts in Support of
Its Motion for Partial Summary Judgment." (Doc. 42, "Scottsdale's
Statement").  Scottsdale moved for partial summary judgment as to
Counts I, II, and III, seeking a declaration as to its duty to
defend and/or indemnify Defendants.  Scottsdale did not move for
summary judgment as to its cause of action for reimbursement of
defense costs (Count IV).

---

[1] Scottsdale also named Maui Land & Pineapple Company, Inc.
("Maui Land") and Kapalua Land Company, Ltd., ("Kapalua Land
Company") as Defendants.  Maui Land and Kapalua Land Company have
filed a statement of no position as to Scottsdale's motion for
partial summary judgment (Doc. 51.)

On July 21, 2005, Defendant Sullivan Properties filed a cross-motion for summary judgment and opposition to Scottsdale's motion for partial summary judgment (Doc. 47) and a separate and concise statement of facts in support of its motion (Doc. 48, "Sullivan Properties' Statement".)

On July 21, 2005, Defendant Robert B. Sullivan filed a counter-motion for summary judgment (Doc. 49) and a separate and concise statement of facts in support of his motion (Doc. 50, "Sullivan's Statement".)

Defendants moved for summary judgment in their favor on all counts of the Complaint.

On July 28, 2005, Scottsdale filed a combined reply memorandum in support of its motion for partial summary judgment and in opposition to Defendant Robert B. Sullivan's counter-motion for summary judgment (Doc. 52).

On July 28, 2005, Scottsdale filed a memorandum in opposition to Sullivan Properties' cross-motion for summary judgment (Doc. 53.)

On August 2, 2005, Defendant Sullivan Properties filed a reply memorandum in support of cross-motion for summary judgment (Doc. 54).

On August 2, 2005, Defendant Robert B. Sullivan filed a reply memorandum in support of counter-motion for summary judgment (Doc. 55).

3

On September 2, 2005, Defendant Robert B. Sullivan filed a
supplement to his counter-motion for summary and opposition to
Scottsdale's motion for summary judgment (Doc. 67).

On September 6, 2005, the parties' motions came on for
hearing.

On September 8, 2005, Defendant Robert B. Sullivan filed a
second supplement to his counter-motion for summary judgment and
opposition to Scottsdale's motion for partial summary judgment
(Doc. 70).

On September 8, 2005, Defendant Sullivan Properties filed a
joinder to Defendant Robert B. Sullivan's second supplement to
counter-motion for summary judgment (Doc. 69).

## BACKGROUND

In this action, Scottsdale seeks a declaration that it is
not required to defend or indemnify Defendants in a lawsuit
styled Maui Land & Pineapple Co., Inc., et al. v. Sullivan
Properties, Inc., et al., filed June 8, 2004, Civil No. 04-00358
HG-BMK ("Underlying Lawsuit")[2], and that it is entitled to
reimbursement from Defendants of all amounts incurred on its
behalf with respect to the Underlying Lawsuit.

The Underlying Lawsuit is now settled and the parties have
entered into a settlement agreement and Stipulated Permanent

---

[2] The Court refers to the complaint in the Underlying
Lawsuit as the "Underlying Complaint".

Injunction. Because the settlement agreement did not require
Defendants to make any monetary payments to Maui Land or Kapalua
Land Company, the indemnity issue is now moot as is the issue of
whether Scottsdale has a continuing duty to defend. The only
remaining issue is whether Scottsdale is entitled to
reimbursement from Defendants for all amounts spent on their
behalf to defend them in the Underlying Action.[3] To decide this
issue, the Court must determine whether Scottsdale had a duty to
defend Defendants in the Underlying Lawsuit. If Scottsdale did
not have a duty to defend Defendants, it is entitled to
reimbursement of the defense costs expended on Defendants' behalf
in the Underlying Lawsuit.

## I. The Permanent Injunction Regarding "Kapalua"

Defendants have been permanently enjoined from conducting
any business under the name or title "Kapalua" since November 20,
1984. In a prior lawsuit, the state court entered a Stipulation
for Entry of Permanent Injunction, dated November 20, 1984,

---

[3] The Court did not locate any Hawaii state law on the issue
of whether an insurer is entitled to reimbursement of defense
costs expended where the court later determines that the insurer
did not have a duty to defend. California courts, however, have
recognized an insurer's right to seek reimbursement of defense
costs where that right has been reserved in the reservation of
rights letter. See Scottsdale Ins. Co. v. MV Transportation, 115
P.3d 460 (Cal. 2005); Buss v. Superior Court of Los Angeles, 939
P.2d 766, 776-78 (Cal. 1997). Here, Scottsdale expressly
reserved the right to seek reimbursement of defense costs in its
reservation of rights letter. (See Scottsdale's Statement of
Facts at Exhibit K.).

(Underlying Complaint at ¶¶ 40-41 and at Exhibit H, hereinafter "Permanent Injunction".)  The Permanent Injunction permanently enjoined Robert Sullivan and his "employees, agents, servants, representatives and all persons acting in concert with him and/or them" from "conducting any business under the name or title 'Kapalua'".

**II. The Underlying Complaint**

According to the Underlying Complaint, Maui Land has been using the name "Kapalua" since approximately 1973.  (Underlying Complaint at ¶¶ 12, 14-18.)  All of the allegations in the Underlying Complaint stem from Defendants' alleged use and infringement of the "Kapalua" trade name.  Maui Land adopted the name "Kapalua" for a master-planned luxury resort and housing complex to include resort hotels, residential condominium units, commercial properties, a golf course, and other recreational facilities ("Kapalua Project") on the island of Maui, Hawaii. (Id. at ¶¶ 8-19)  The Kapalua Project now encompasses approximately 1,650 acres.  (Id. at ¶ 24.)   Maui Land and Kapalua Land Company own over 80 trade name registrations that include the word "Kapalua".  (Id. at ¶ 19.)  Kapalua Land Company also has a State of Hawaii trademark registration for the word "Kapalua" with a stylized butterfly and a pineapple at the center.  (Id. at ¶ 18.)

The nine-count Underlying Complaint seeks declaratory and

injunctive relief against Defendants for trademark infringement
and false or misleading designations of origin and/or sponsorship
under 15 U.S.C. § 1125(a) and § 1116(a); dilution under 15 U.S.C.
§ 1125(c)(1); cyberpiracy under 15 U.S.C. § 1125(d) and Haw. Rev.
Stat. § 481B-22; injury to business reputation and dilution under
Haw. Rev. Stat. § 482-32; unfair competition and unfair and
deceptive trade practices under Haw. Rev. Stat. § 480-2(a) and §
481A-3; and common law palming off, trademark infringement, and
unfair competition.

The Underlying Complaint details the long history of the
dispute, dating back to approximately 1983, between Maui Land and
Defendants regarding the "Kapalua" name.  (Underlying Complaint
at ¶ 32.)  From 1976 to 1980, Defendant Robert Sullivan was a
real estate sales person for the Kapalua Land Company where he
sold real estate in the Kapalua Project.  (Id. at ¶ 26.)  In
1980, Defendant Robert Sullivan left Kapalua Land Company.  (Id.
at ¶ 28.)  In 1981, non-party Carmie B. Richesin entered into
non-assignable agreements with Kapalua Land Company to lease
certain commercial space at The Shops at Kapalua and to license
use of the Kapalua Land Company's trade name, "Kapalua Realty"
and trademark (the word "Kapalua" with a stylized butterfly) (Id.
at ¶ 31.)

In early 1982, Mr. Richesin formed Kapalua Properties, Inc.
("Kapalua Properties") (Id. at ¶ 30.)  On or about September

1982, Defendant Robert Sullivan and non-party William Conlen acquired controlling ownership interest in Kapalua Properties. (<u>Id</u>. at ¶ 30.)  Kapalua Land Company refused to add Defendant Sullivan and Mr. Conlen to the lease for commercial space at The Shops at Kapalua.

A lawsuit in the Second Circuit Court of the State of Hawaii, <u>Kapalua Properties, Inc. d/b/a Kapalua Realty v. Kapalua Land Co., Inc</u>., Civil No. 6703(1), followed.  (<u>Id</u>. at ¶ 32.)  On November 20, 1984, the court entered a Permanent Injunction, enjoining Defendants from conducting any business under the name or title "Kapalua".  (<u>Id</u>. at Exhibit H.)[4]

The Underlying Complaint contains detailed allegations of the Defendants' initial and continuing violations of the Permanent Injunction (<u>Id</u>. at 15-25.)  With regard to the period prior to April 1998, the effective date of the first Scottsdale policy, Maui Land and Kapalua Land Company allege that Defendants violated the Permanent Injunction in the following ways:

• In 1985, Defendant Robert Sullivan caused advertisements to be placed using the name "Kapalua" in conjunction with the name of his real estate business

---

[4] The Underlying Complaint explains that Robert Sullivan and William Conlen formed Sullivan & Conlen, Inc. which was later changed to Sullivan Properties, Inc.  (<u>Id</u>. at ¶¶ 54-61.) Defendant Robert Sullivan does not dispute that he was an owner of Defendant Sullivan Properties.  (<u>See</u> Sullivan's Statement at 2.)  As such, Sullivan Properties is bound by the Permanent Injunction as "a person acting in concert" with Robert Sullivan.

in an attempt to portray his business as affiliated
with the "Kapalua" Project. (Underlying Complaint at ¶
46.)

- On March 20, 1985, as a result of Defendant Robert
  Sullivan's advertisements, Kapalua Land Company filed a
  Motion for Contempt and for Attorneys' Fees in the
  Second Circuit Court of the State of Hawaii. (Id. at ¶
  48.)

- On May 21, 1985, the state court entered a Stipulation
  Re Motion for Contempt and Order in which the
  defendants, including Defendant Robert Sullivan,
  stipulated that their advertisements would not refer to
  "Kapalua" as a title to their business. (Id. at ¶¶ 49-
  50.)

- On or about June 27, 1995, Defendant Sullivan
  Properties registered the Internet domain name
  "Kapalua.com" for a website. (Id. at ¶ 65.)

With regard to the period after April 1998, the effective
date of the first Scottsdale policy, Maui Land and Kapalua Land
Company allege, among other things, that Defendant Sullivan
Properties registered the Internet domain name "Kapalua.net" for
a website and placed a listing for "Kapalua.com" in the 2002-2003
Verizon telephone directory. (Underlying Complaint at ¶¶ 66,
75.)

Maui Land and Kapalua Land Company allege that Defendants have "engaged willfully in the acts complained of herein, in blatant violation of the Permanent Injunction and trademark and real estate law, with actual knowledge of Plaintiffs' prior use and registration of the 'Kapalua' trade names and trademark. . . " (<u>Id</u>. at ¶ 86.)  Indeed, Maui Land and Kapalua Land Company specifically allege that Defendants' use of the Internet domain names "Kapalua.com" and "Kapalua.net" are in contravention of the Permanent Injunction prohibiting Defendant Robert Sullivan and others from conducting any business under the name or title "Kapalua".  (<u>Id</u>. at ¶ 7.)

## III. The Insurance Policies

Scottsdale first issued a commercial general liability insurance policy to Sullivan Properties effective April 17, 1998. (<u>See</u> Scottsdale's Statement at No. 1 and Exhibit A.)  Scottsdale issued a total of seven insurance policies covering the period from April 17, 1998 to April 17, 2005.  (<u>See</u> Scottsdale's Statement at Exhibits A-G.)[5]  The commercial general liability (CGL) coverage form that was part of each policy provided "advertising injury" coverage, including coverage for "misappropriation" or "use" of "advertising ideas."  (<u>See</u> Scottsdale's Statement at No. 2 and at Exhibits A-G.)  Each

_____

[5] When referring to the policies collectively, the Court will use the term "Policy".

policy contained a first-publication exclusion, excluding coverage for an "advertising injury" arising out of material "whose first publication took place before the beginning of the first policy period."

The first five Scottsdale policies defined advertising injury as follows:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title, or slogan.

(See Scottsdale's Statement at No. 2 and Exhibits A-E at CGL Coverage Form at page 10 of 13, Section V - Definitions.)

The first five Scottsdale policies contained a "first publication exclusion" providing as follows:

This insurance does not apply to:

a. "Personal injury" or "advertising injury";

    ****

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

(See Scottsdale's Statement at No. 2 and Exhibits A-E at CGL

11

Coverage Form at page 4-5 of 13, Coverage B. Personal
Injury and Advertising Injury Liability; 2. Exclusions).

The last two Scottsdale polices, covering the period
from April 2003 to April 2005, include "[t]he use of
another's advertising idea in your 'advertisement'" or
"[i]nfringing upon another's copyright, trade dress or
slogan in your 'advertisement'" within the definition of
personal and advertising injury. (<u>See</u> Scottsdale's
Statement at Exhibits F-G at CGL Coverage Form at page 14 of
16, Section V - Definitions, 14. "Personal and advertising
injury."). Like the other five policies, the first
publication exclusion in the last two policies excludes
coverage for material published prior to the beginning of
the policy period. (<u>See</u> Scottsdale's Statement at Exhibits
F-G at CGL Coverage Form at page 6 of 16, Coverage B.
Personal Injury and Advertising Injury Liability; 2.
Exclusions).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c). There must
be sufficient evidence that a reasonable jury could return a
verdict for the nonmoving party. <u>Nidds v. Schindler Elevator
Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for
the court the portions of the materials on file that it believes
demonstrate the absence of any genuine issue of material fact."
T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)).  The moving party, however, has no
burden to negate or disprove matters on which the opponent will
have the burden of proof at trial.  The moving party need not
produce any evidence at all on matters for which it does not have
the burden of proof.  Celotex, 477 U.S. at 325.  The moving party
must show, however, that there is no genuine issue of material
fact and that he or she is entitled to judgment as a matter of
law.  That burden is met simply by pointing out to the district
court that there is an absence of evidence to support the
nonmovant's case.  Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).  "If the evidence is merely
colorable, or is not significantly probative, summary judgment

may be granted." <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party. <u>State Farm Fire & Casualty Co. v. Martin</u>, 872
F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324. The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at
trial. Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.
The opposing party cannot rest on mere allegations or denials.
Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins.</u>
<u>Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing
party rest on conclusory statements. <u>National Steel Corp. v.</u>
<u>Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

### I. Hawaii Insurance Law - The Duty to Defend and Policy Exclusions

The court looks to the language of the insurance policy
involved to determine the scope of the insurer's duty.
<u>Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.</u>,
875 P.2d 894, 904 (Haw. 1994). Under Hawaii law, "[b]ecause
insurance policies are contracts of adhesion and are premised

14

on standard forms prepared by the insurer's attorneys, we have
long subscribed to the principle that *they must be construed*
*liberally in favor of the insured and [any] ambiguities [must*
*be] resolved against the insurer.* Put another way, the rule is
that policies are to be construed in accord with the
reasonable expectations of a layperson." <u>Allstate Ins. Co. v.</u>
<u>Ponce</u>, 99 P.3d 96, 108-109 (Haw. 2004) (citations and
quotations omitted).

A policy provision, however, is not ambiguous just
because the insurer and insured disagree over the
interpretation of the terms of a policy.  "Ambiguity exists
and the rule is followed only when the [policy] taken as a
whole, is reasonably subject to differing interpretation.
Absent an ambiguity, the terms of the policy should be
interpreted according to their plain, ordinary, and accepted
sense in common speech... "  <u>Oahu Transit Services, Inc. v.</u>
<u>Northfield Ins. Co.</u>, 112 P.3d 717, 722 n.7 (Haw. 2005)
(quoting <u>Hawaiian Insurance & Guaranty Co., Ltd. v. Chief</u>
<u>Clerk of First Circuit Court</u>, 713 P.2d 427, 431 (Haw. 1986)).

Where a phrase is unambiguous, the court need not
interpret it differently depending on whether it appears in
the coverage clause or the exclusionary clause.  <u>See</u> <u>Oahu</u>
<u>Transit Services, Inc.</u>, 112 P.3d at 722 (citing <u>Chief Clerk of</u>
<u>First Circuit Court</u>, 713 P.2d at 431 (holding that the plain

15

language of the insured's homeowner's policy excluded coverage
for injuries arising out of an automobile accident); Northern
Ins. Co. of N.Y. v. Ekstrom, 784 P.2d 320, 323 (Colo. 1989)
(declining to give the phrase "arising out of" different
meanings depending on whether the phrase appeared in a
coverage clause or an exclusionary clause)).

The duty to defend is broader than the duty to indemnify.
See Sentinel Ins. Co., Ltd., 875 P.2d at 904. The duty to
defend " 'rests primarily on the *possibility* that coverage
exists. This possibility may be remote, but if it exists[,]
the [insurer] owes the insured a defense.' " Id. (citing
Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co.,
Ltd., 654 P.2d 1345, 1349 (1982) (quoting Spruill Motors, Inc.
v. Universal Under. Ins. Co., 512 P.2d 403, 407 (Kan. Ct. App.
1973)) (emphasis added)). "All doubts as to whether a duty to
defend exists are resolved against the insurer and in favor of
the insured [.]" Id. (citations omitted).

In determining whether a claim is covered, the court
focuses on the alleged claims and facts of the underlying
complaint. "[I]f the plaintiff's [underlying] complaint
against the insured alleged facts which would have supported a
recovery covered by the policy, it was the duty of the
defendant [insurer] to undertake the defense, until it could
confine the claim to a recovery that the policy did not

cover." <u>CIM Ins. Corp. v. Masamitsu</u>, 74 F. Supp. 2d 975, 985
(D. Haw. 1999) (citing <u>Allstate Ins. Co. v. Hui</u>, 57 F. Supp.
2d 1039, 1043 (D. Haw. 1999) (quoting <u>Commerce & Industry Ins.</u>
<u>Co. v. Bank of Hawaii</u>, 832 P.2d 733 (Haw. 1992)). "Thus, an
insurance company has an obligation to investigate to
determine whether a third party's action raises a potential
for coverage and thus implicates its duty to defend when '(1)
the allegations in the pleadings should alert the insurer that
there is a potential for coverage ...; (2) the allegations
differ from facts the insurer knows or can readily determine;
or (3) the allegations are ambiguous.' " <u>Id</u>. (citations and
quotations omitted).

   "[W]hen the *facts* alleged in the underlying complaint
unambiguously exclude the possibility of coverage, conclusory
assertions contained in the complaint regarding the legal
significance of those facts (such as that the facts as alleged
demonstrate 'negligent' rather than 'intentional' conduct) are
insufficient to trigger the insurer's duty to defend." <u>Dairy</u>
<u>Road Partners v. Island Ins. Co., Ltd.</u>, 992 P.2d 93, 112
(Haw. 2000). Similarly, where a third party suing an insured
alleges a claim that does not raise the potential for coverage
under the insured's policy, "and all of the factual
allegations and injuries alleged in other counts of the
complaint are 'unquestionably implicate[d]' in the uncovered
claim, *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger,* 934

P.2d 909, 912 (Colo. Ct. App. 1997), the insurer does not have
a duty to defend the insured." Bayudan v. Tradewind Ins. Co.,
Ltd., 957 P.2d 1061, 1062 (Haw. App. 1998) (insurer had no
duty to defend because all of her claims and alleged injuries
in underlying complaint were inherently related to the
kidnapping and assault claim, which insured admitted was not
covered by his insurance policy).

## II. Allegations of Advertising Injury in the Underlying Complaint

The first question is whether the underlying Complaint
asserts claims based on an advertising injury that would be
covered under the Policy.  Absent an advertising injury,
Defendants' claims would not be covered under the Policy.
Courts have construed similar insurance policy language which
defines advertising injury as the "misappropriation of
advertising ideas or style of doing business" and the
"infringement of copyright, title, or slogan" as covering
trademark infringement claims. See Dogloo, Inc. v. Northern
Ins. Co. of New York, 907 F. Supp. 1383, 1389-90 (C.D. Ca.
1995) (policy's coverage for advertising injuries arising out
of "misappropriation of advertising ideas or style of doing
business" potentially covered trade dress infringement claim).

Here, the allegations in the Underlying Complaint appear
to fall under the definition of advertising injury.  All of
Maui Land and Kapalua Land Company's claims stem from

Defendants' alleged infringement of the "Kapalua" trade names and trademark and the Underlying Complaint is based on Defendants' use of those trade names in advertising. (See Underlying Complaint at ¶¶ 71, 75, 76, 77, 79, 86, 95).  The Court, however, need not decide this issue because even assuming that the Underlying Complaint alleges an advertising injury, the first-publication exclusion excludes coverage.

**III. The First Publication Exclusion Applies to Bar Defendants ' Insurance Claim**

The first-publication exclusion excludes coverage for advertising injuries "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."  The Court, sitting in diversity, looks to Hawaii state law regarding the interpretation of this exclusion.  There are no Hawaii state cases directly on point.  The Court looks to the general body of Hawaii insurance law and how it would be applied to the facts before the Court.  See Sentinel Ins. Co. Ltd., 875 P.2d at 904 (setting forth general principals of Hawaii insurance law).

**A. The First Publication Exclusion is Unambiguous**

The first-publication exclusion is unambiguous because it is not reasonably subject to differing interpretations.  See Oahu Transit Services, Inc., 112 P.3d at 722.   Ambiguity is

not determined in the abstract.  See Mez Industries, Inc. v.
Pacific National Ins. Co., 90 Cal. Rptr. 2d 721, 729 (1999).
Ambiguity is determined "in the context of (1) the language of
the policy, (2) the general circumstances of th[e] particular
case and (3) common sense."
Id. at 731 (quotations omitted).

        The dispute (i.e., advertising injury) in the underlying
complaint arises out of the use of the "Kapalua" trade names
and trademark.  The issue in this case is whether Defendants'
prior unlawful use of the "Kapalua" name since at least 1984
constitutes the publication of material prior to the effective
date of the first policy in April 1998.

        The Policy does not define the term "material".  Under
the circumstances of this case -- the trademark infringement
context -- it is clear that the unlawful use of the trade name
or mark is the "material" at issue for purposes of the first-
publication exclusion.  Common sense also makes this the only
reasonable interpretation of the exclusion in the trademark
context.  It follows that material giving rise to the alleged
advertising injury at issue in the Underlying Complaint is the
use of the "Kapalua" trade names and trademark.

        In support of their argument that the insurance policy
language is ambiguous, Defendants cite two California district
court cases.  The Ninth Circuit Court of Appeals has reversed
the cases cited by Defendants.  See Everett Associates, Inc.

v. Transcontinental Ins. Co., 57 F. Supp. 2d 874 (N.D. Ca.
1999) rev'd, 35 Fed. Appx. 450 (9th Cir. May 2, 2002); Title
Homedics, Inc. v. Valley Forge Ins. Co., 1999 WL 33301457
(C.D. Cal. Oct. 29, 1999), rev'd Homedics, Inc. v. Valley Forge
Ins. Co., 315 F.3d 1135 (9th Cir. 2003).  The reasoning
applied by the court in Homedics, Inc., 315 F.3d 1135,
actually lends support for this Court's finding that the first-
publication is unambiguous in the trademark infringement
context.[6]

        In Homedics, Inc., the district court had found that a
patent infringement claim was potentially covered under the
insurance policy as a "misappropriation of an advertising idea
or style of doing business".  The Ninth Circuit Court of
Appeals reversed, finding that the phrase "misappropriation of
an advertising idea or style of doing business" was
unambiguous in the patent infringement context where the
underlying complaint did not allege violation of a patent
involving advertising ideas or style of doing business.  Id.
at 1141.  Absent such allegations, a person could not
reasonably read the policy language to include patent
infringement.  Id.

_____

        [6] The Court reached a similar conclusion in Everett
Associations, Inc. v. Transcontinental Ins. Co., 35 Fed. Appx.
450 (May 2, 2002), although that opinion is unpublished and this
Court cannot rely on it as precedent.  See Ninth Circuit Court of
Appeals Rule 36-3.

Homedics, Inc. emphasized the importance of interpreting the policy language in the context of a particular case.  In the context of this case the first-publication exclusion is unambiguous.  The only way for Defendants' claim to be covered under the Policy is if their infringing or allegedly infringing use of the "Kapalua" name gives rise to an advertising injury.  In this context, the only objectively reasonable interpretation of the first-publication exclusion is that it precludes coverage for Defendants' prior infringing use of the "Kapalua" name.

### B. The Infringing Material Need Not Be Identical

The material published prior to the inception date of the policy need not be identical to the material at issue in the underlying complaint.  The fact that Defendants' first use of the "Kapalua" name was in printed material and the infringing use of the "Kapalua" name alleged in the Underlying Complaint was both on the internet and in printed material does not preclude application of the first-publication exclusion.

In the defamation context, for example, the first-publication exclusion has been applied when the post-policy period publication involved substantially the same offending material as previously published.  See Ringler Associates, Inc. v. Maryland Casualty Co., 96 Cal. Rptr. 2d 136 150-51 (Cal. Ct. App. 2000).

Relatively few courts have addressed the application of the first-publication exclusion in the trademark context. Some of those that have, however, have looked to the initial date on which the insured allegedly used the infringing trademark regardless of whether the underlying lawsuit involved the exact same infringing conduct.

The court in _Interlocken International Camp, Inc. v. Markel Ins. Co._, 2003 WL 881002 (D.N.H. March 4, 2003), held that the first-publication exclusion barred coverage based on facts substantially identical to those present here. The commercial general liability insurance policy at issue in _Interlocken_ contained the same definition of advertising injury and the same first-publication exclusion as in this case. _Interlocken International Camp, Inc._, 2003 WL 881002, at * 1.

A dispute arose over the use of the trade name "Interlocken". _Id_. Interlocken filed a complaint against another corporation, IIC, alleging trademark infringement, cybersquatting, and deceptive trade practices. _Id_. at *2.

In addressing the applicability of the first-publication exclusion, the court first noted that it was undisputed that IIC, the defendant in the underlying complaint and the party seeking insurance coverage, had used the trade name "Interlocken" in advertising and promotional materials long before it purchased the policies on which its coverage claim

23

was based.  Id.

The court then addressed the scope of the first-
publication exclusion.  Interlocken argued that the term
"material" meant IIC's use of the confusingly similar name
"Interlocken" on its website and in other advertising and
promotional materials.  Id.  IIC, on the other hand, argued
that the "material" giving rise to the underlying lawsuit was
its use of the domain name "www.interlocken.org" rather than
its other advertising uses of "Interlocken".  Id.  IIC
submitted, as Defendants do in this case, that the underlying
complaint was based on its use of the domain name and that its
prior use of "Interlocken" in newspaper advertisements was
irrelevant.  Id.

The court rejected IIC's narrow reading of the first-
publication exclusion (i.e., requiring that the infringing
trade name be used in exactly the same way) and found such an
interpretation inconsistent with the obvious purpose of the
first-publication exclusion which is "'to prevent an individual
who has caused an injury from buying insurance so that he can
continue his injurious behavior.'"  Id. (citing Maddox v. St.
Paul Fire and Marine Ins., 179 F. Supp. 2d 527, 530 (W.D. Pa.
2001)).

The court's reasoning in Doskocil, Inc. v. Fireman's Fund
Ins. Co., 1999 WL 430755 (N.D. Cal. June 17, 1999), likewise
suggests a broader interpretation of the first-publication

exclusion.  The Doskocil court applied the first-publication

exclusion to advertisements for a product line of pet feeders

which allegedly infringed the "Le Bistro" trade name.  Id. at

*4.  The court considered the insured's "advertising activity"

as a whole and did not look at each individual use of the

infringing trademark.  Id.; see also Finger Furniture Co.,

Inc. v. Travelers Indemnity Co. of Connecticut, 2002 WL

32113755, at *12 (S.D. Tex. Aug. 19, 2002) (identifying the

key question for application of the first-publication

exclusion in the trademark infringement context as when the

first infringing publication occurred).[7]

     This Court agrees with the Interlocken court's reasoning.

The issue is whether Defendants infringed the "Kapalua" trade

names and trademark prior to the Policy's effective date.  It

is undisputed that Defendants infringed on the "Kapalua" trade

name and mark by using it in advertising and promotional

---

     [7] Although non-precedential, the Court notes that the Court
of Appeals of the Ninth Circuit has, in unpublished opinions,
upheld the application of the first-publication exclusion where
the insured previously infringed the trade name at issue in the
underlying complaint. See Maxtech Holding, Inc. v. Federal Ins.
Co., 202 F.3d 278, 1999 WL 1038281, at *2 (9th Cir. Nov. 12,
1999) (first-publication exclusion applied to bar coverage where
it was undisputed that the first injurious publication of the
allegedly infringed trade name occurred prior to the policy
period) (applying California law); Federal Ins. Co. v. Learning
Group International, Inc., 56 F.3d 71, 1995 WL 309047, at *2 (9th
Cir. May 19, 1995) (first-publication exclusion was unambiguous
and applied to bar coverage where first publication of offending
trade name giving rise to alleged advertising injury occurred
prior to policy period) (applying California law).

materials long before it purchased the Policy.  Indeed,
Defendants have been enjoined by court order since November
20, 1984 from conducting any business under the name or title
"Kapalua".  The fact that Defendants' prior infringing use was
not via the internet does not render the first-publication
exclusion inapplicable.  The term "material" means Defendants'
infringing, or allegedly infringing, use of the "Kapalua"
trade names and trademark whether on the internet or in other
advertising and promotional materials.  The fact remains that
the Underlying Complaint accuses Defendants of infringing the
"Kapalua" name - the very same trade name that it infringed
several years earlier.[8]

Many of the cases relied upon by Defendants are factually
distinguishable.  In Dogloo, Inc. v. Northern Ins. Co. of New
York, 907 F. Supp. 1383 (C.D. Cal. 1995), for example, the
court declined to apply the first-publication exclusion
because, based on the record before it, it could not determine
whether any advertising published prior to the policy period
caused the type of injury alleged in the insured's
counterclaim.  Id. at 1391.

---

[8] All of the claims in the Underlying Complaint, including,
for example, the claims of unfair competition and cybersquatting,
stem from Defendants' use of the "Kapalua" name.  Such claims are
likewise uncovered since they are unquestionably implicated in
the uncovered infringement claim.  See Bayudan, 957 P.2d at 1062;
see also Interlocken International Camp. Inc., 2003 WL 881002 at
* 2.

Defendants also rely on <u>Adolfo House Distributing Corp.</u> <u>v. Travelers Property and Casualty, Ins. Co.</u>, 165 F. Supp. 2d 1332 (S.D. Fla. 2001) and <u>International Communication</u> <u>Materials, Inc. v. Employers Ins. of Wausau</u>, 1996 WL 1044552 (W.D. Pa. May 29, 1996). Both courts adopted a narrow interpretation of the first-publication exclusion which the Court believes is inconsistent with Hawaii state law. <u>See</u> <u>Adolfo House Distributing Corp.</u>, 165 F. Supp. 2d at 1342 (first-publication exclusion applied only to slander, libel, and invasion of privacy claims); <u>International Communication</u> <u>Materials, Inc.</u>, 1996 WL 1044552, at *4 (first-publication exclusion does not apply even where material published during policy period is "similar to" material published prior to policy period).

For these reasons, the Court finds that the first-publication exclusion applies to bar coverage of Defendants' insurance claim based on the Underlying Complaint.

**IV. The "Known Loss" Rule Bars Coverage**

The "known loss" rule also bars coverage of Defendants' insurance claim. "The known loss rule is based on the fundamental principle [of insurance law] that insurance is intended to cover risks [or contingencies] which are not definitely known to the insured." <u>Sentinel Ins. Co., Ltd.</u>, 875 P.2d at 919 (citing <u>Continental Ins. Co. v. Beecham Inc.</u>, 836 F. Supp. 1027, 1046 (D.N.J. 1993); Haw. Rev. Stat. §

27

431:1-201 (1987) ("[i]nsurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies")).  "Under the known loss rule, 'a loss [is] uninsurable ... when the insured knew or should have known that there was a substantial probability of loss before the [policy] period began.'"  Id. (citing CPC Int'l, Inc. v. Aerojet-General Corp., 825 F. Supp. 795, 809 (W.D. Mich. 1993)).

Here, Defendants have been enjoined from using the "Kapalua" trade names and trademark since 1984, long before the Policy's April 1998 effective date.  Indeed, Defendants have a long history of infringing the "Kapalua" trade name and trademark.  In 1985, for instance, Defendants violated the Permanent Injunction and, as a result, were subject to a contempt order.

The Underlying Complaint also illuminates Defendants' willful conduct.  The Complaint alleges that "Defendants engaged willfully in the acts complained of herein, in blatant violation of the Permanent Injunction and trademark and real estate law, with actual knowledge of Plaintiffs' prior use and registration of the "Kapalua" trade names and trademark . . ." (Underlying Complaint at ¶ 86); see also id. at ¶ 98 (Defendants have displayed willful course of conduct), ¶¶ 111, 116 (alleging that Defendants acted in bad faith), ¶¶ 121, 128 (Defendants' actions were taken with full knowledge of

28

Permanent Injunction and Consent Order).

Under the facts of this case, the Court finds that the Defendants knew or, at the very least, should have known that their continued attempts to use the "Kapalua" trade name or trademark, regardless of the medium (*i.e.*, printed advertisements, on the internet), had a substantial probability of resulting in a loss. As a matter of policy, Defendants cannot insure against such a substantially probable, if not certain, loss.

### CONCLUSION

The first-publication exclusion and the "known loss" rule apply because Defendants first infringed the "Kapalua" trade name and trademark before the effective date of the first insurance policy. Defendants' claims based on the Underlying Lawsuit are not covered.

For the foregoing reasons,

(1) Scottsdale      's Motion for Partial Summary Judgment is **GRANTED**;

(2) Defendant Sullivan Properties, Inc.      's Cross-Motion for Summary Judgment is **DENIED**; and

(3) Defendant Robert B. Sullivan      's Counter-Motion for Summary Judgment is **DENIED**.

Although based on the Court's ruling, Scottsdale is entitled to reimbursement of costs and expenses incurred by it

with regard to Defendants' defense in the Underlying Lawsuit,
Scottsdale has not moved for summary judgment on its
reimbursement claim (Count IV of the Complaint).

In moving for summary judgment as to Count IV, the Court
**DIRECTS** Scottsdale to document all costs and expenses for
which it seeks reimbursement.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 27, 2006.



Helen Gillmor
Chief United States District Judge

---

SCOTTSDALE INS. CO. v. SULLIVAN PROPERTIES, INC., et al.,
Civil No. 04-00550 HG-BMK; **ORDER GRANTING PLAINTIFF SCOTTSDALE
INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND
DENYING DEFENDANT SULLIVAN PROPERTIES, INC.'S CROSS-MOTION FOR
SUMMARY JUDGMENT; AND DENYING DEFENDANT ROBERT B. SULLIVAN'S
COUNTER-MOTION FOR SUMMARY JUDGMENT**